156 P.2d 160

### GILES v. HERZSTEIN.

No. 4872.

Supreme Court of New Mexico.

Feb. 7, 1945.

A. J. Krehbiel, of Clayton, for appellant.

O. P. Easterwood, of Clayton, for appellee.

MABRY, Justice.

This is an appeal by Simon Herzstein, defendant below, from a judgment in favor of appellee J. C. Giles in the sum of $775. The case was tried to a jury upon a complaint seeking recovery of $1950 allegedly owing as one-half of the profits made in a joint venture of buying and selling cattle.

The sole question that we need here consider is that of appellant's challenge going to the sufficiency of the evidence in support of the verdict and judgment.

This appeal results from the second trial of the case. This court reversed the earlier case (Giles v. Herzstein, 43 N.M. 518, 96 P.2d 289, 290) and remanded for a new trial because of procedural error committed. The partnership, or joint venture, undertaking was upon the basis, to quote from the complaint, that the parties were "to go into the cattle buying business, Giles to find the suitable cattle for purchase and Herzstein to furnish the money with which to make the purchase and all profits accruing to be divided equally". And appellee testifies that: "I was to buy these cattle. and look after them and get one-half 'e profits".

The cattle were eventually sold and shipped to Illinois while being cared for and pastured in Texas, to which place they had been shipped from New Mexico on account of shortage of pasture here. No accounting was ever had between the parties but this suit was brought by appellee seeking to recover what he alleged to be one-half of the net profits of some $3940. Appellant contended that instead of profits the venture experienced a loss of $1327.94, and produced actual figures which would support his claim, if uncontradicted.

Appellant, who furnished the capital for the purchase of the cattle, and advanced all money for expenses in care, and shipment, seems also to have had much to do with the management thereof; and he also made the sale. Appellee disagrees with appellant that losses were also to be "shared equally", and the jury took a like view in denying appellant's cross-complaint for $827.86, or one-half of the losses he claims were sustained.

Appellee Giles seems to know but little about how the cattle were pastured and fed, shipped, or sold. Appellee knew, however, that the cattle brought only 6 cents per pound when sold and shipped to Illinois. There is substantially no disagreement over the purchase price, or initial cost of the cattle (before incurring the costs of handling, feeding, and shipping) which was $5460 for the two hundred head. Appellant's testimony is undisputed that there was incurred a total expense of $1327.94, on account of the cattle from the time of purchase to the time of sale when they brought $5599.80. It appears throughout that appellee left all the details of moving to new pasture, arranging for care and feed, as well as for the sale, to appellant. Although he may have at one time protested the moving of the cattle from New Mexico to Texas for pasture and feed, he makes no point that appellant did not have authority to do all this. In fact, counsel for appellee says that "they" shipped a bunch of about two hundred head of cattle "from Mt. Dora, New Mexico to Aiken, Texas; * * * then they shipped these cattle". Appellant, without objection so far as the record discloses, looked after the payment of all expenses incurred in carrying the cattle through, and in marketing them.

There is no showing, if there be a claim, even, that the best price possible was not

obtained at the time of sale, in 1938. The record, which we have carefully examined under the vigorous challenge of counsel for appellant, is wholly without evidence to support a verdict of $775 as net profits made, much less the claim of appellee that his share of the profit of $3,940 should have been $1970, unless it can be said that appellee's testimony that he had once been told by appellant that "those cattle made some $3,940.00" could be said to be sufficiently substantial to overcome the clear and uncontradicted proof all to the contrary.

Appellee offers no evidence to support his claim of profit in any amount. He had not pursued any course by which it could be said he had appropriately sought an accounting herein. Appellee admits that all such expenses as pasturing, feeding, and shipment were to be deducted before profits were to be estimated and divided.

■ Appraising the evidence in a light most favorable to appellee, as we must, let us start with the figure of substantially $5460 as the initial cost of the two hundred head of cattle. Appellant testifies, without contradiction, that he expended in that behalf a total of $1327.94 between the time of purchase and the time of sale of the cattle. The testimony of appellee himself shows that at least the following were legitimate expenses to be charged against any gross profits to be realized: pasturing sixty-seven head in New Mexico for approximately six months, $134; the freight charges, which the uncontradicted testimony of appellant shows to have been $294. Thus we have $428 as an expense which appellee expressly recognizes as legitimate items of expense which would be deductible. As to the other items testified to by appellant to make up the total expense of $1327.94, appellee knows nothing about them, but concedes that if properly incurred would be charges to be equally borne by the two. So taking only the testimony of appellant himself, we find the cattle upon a weight of 93,330 pounds selling, at 6 cents per pound, for $5599.80. Since they cost $5460 plus $428 which it may fairly be said appellee admitted must have expended upon them, we have, at most, under his own testimony, a net loss of almost $300.

It cannot be known, of course, why the jury allowed $775 as damages instead of the full amount, or one-half of $3,940. It must have been, as appellant suggests, a compromise verdict. The evidence offered on behalf of appellant is wholly uncontradicted as to the initial cost, the amount incurred for expenses, and the price for which the cattle sold, all testified to in detail, unless it could be said, as it cannot be, that this evidence and the results shown by appellee's own contrary testimony would be overcome by appellee's statement that he was once told by appellant that "These cattle made some $3,-940.00".

■ It is not clear just what appellee's attitude was as to his obligation to look after the cattle when they were sent to

Texas for pasture. He did go there once and dehorned some of the stock; but we find him testifying at one time that appellant did not "ask" him to go to Texas and look after the cattle, and that he didn't know what arrangements were made there for pasturage and care, that "Mr. Herzstein made the arrangements down there". There seems, however, to be no claim that the expenses in caring for the cattle either here and while in Texas (and it is in Texas that most of the expenses were incurred), and the shipping costs, were not properly to be considered in arriving at any profit. Appellee concedes, in fact, that this is to be done. He offers no evidence whatsoever to contradict the exact figures representing these expenses, each and all items being paid by check, but falls back upon the broad statement of appellant once allegedly made, long after the event, that "these cattle made some $3,940.00". All the testimony including that of appellee himself shows it was impossible for the cattle to have made any profit whatever.

We uttered a mere legal commonplace when we stated the grounds upon which appellee could recover in reversing for a new trial upon the former appeal (Giles v. Herzstein, supra). We there said: "He (appellee) must establish the cost of the cattle plus the legitimate operating expenses, which total is then deducted from the sale price, showing the net profit if any." Has appellee done this? We think not. It does not make sense to say that appellant spoke seriously when he said to appellee that "these cattle made some $3,940.00", and in the same breath said that he owed appellee nothing on the transaction.

We might with some reason assume that appellant was simply injecting a little irony there, obviously such an over-statement as to have appeared ridiculous to appellee. Appellant had paid everything by check and could have been called upon to show every item charged to expenses had appellee properly persevered in seeking facts and figures. Obviously appellee, a seasoned cattleman, knew there could have been no profit.

We are constrained to hold that the verdict is without substantial support in the evidence and the judgment thereon must be reversed. The judgment is therefore reversed with direction to reinstate the cause, set aside the judgment so given and entered, and to give judgment for the appellant; and it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and LUJAN, JJ., concur.